**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**PORTLAND DIVISION**

**KELLY J. FOSTER,**

**Plaintiff,**

**v.**

**MICHAEL J. ASTRUE, Commissioner of Social Security,**

**Defendant.**

**09-CV-1422-BR**

**OPINION AND ORDER**

**NICOLE L. SCHNEIDER**
Helzer & Cromar, LLP
4900 S.W. Griffith Drive
Suite 245
Beaverton, OR 97005
(503) 626-2889

Attorneys for Plaintiff

**DWIGHT C. HOLTON**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1053

**DAVID MORADO**
Regional Chief Counsel
**NANCY A. MISHALANIE**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104
(206) 615-2114

Attorneys for Defendant

**BROWN, Judge.**

Plaintiff Kelly J. Foster seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

## BACKGROUND

Plaintiff filed an application for DIB on October 13, 2004,

alleging a disability onset date of December 31, 2000. Tr. 20.[1] In that application, Plaintiff advised the Social Security Administration (SSA) that she had reviewed her earnings record from 1978 to the date of her application, "and it appears to be correct as posted." Tr. 22. The application was ultimately denied on the ground that Plaintiff did not have enough quarters of coverage to qualify for benefits. Tr. 26-28.

Plaintiff filed a second application for DIB on December 11, 2006, alleging a disability onset date of January 1, 2000. Tr. 94-95. In that application, she advised the SSA that she had reviewed her earnings statement and believed it was not correct. Tr. 95. Specifically, Plaintiff asserted she "believe[d] her] earnings record should show an additional $3000.00" in earnings for 1990. Tr. 95. On February 6, 2007, the SSA again denied Plaintiff's application on the ground that Plaintiff did not have enough quarters of coverage to qualify for benefits. Tr. 29-31. Plaintiff requested a hearing.

On March 5, 2007, the SSA advised Plaintiff that it had received her request for a hearing and noted Plaintiff had stated in 2004 that she believed her earnings report was accurate. The SSA requested Plaintiff provide proof of the $3,000 in earnings that she believed to be missing from her earnings report for the

[1] Citations to the official transcript of record filed by the Commissioner on May 12, 2010, are referred to as "Tr."

year 1990. Tr. 33. The SSA advised it would accept a photocopy of Plaintiff's W-2 form or tax return from 1990 or certified copies of her earnings statements from her 1990 employers. Tr. 33.

On March 16 and March 26, 2007, the SSA sent Plaintiff letters in which they informed Plaintiff that they had not received proof of Plaintiff's allegedly missing earnings for 1990.

On August 16, 2007, the SSA advised Plaintiff about the hearing process, including how to submit or to obtain further evidence prior to the hearing. Tr. 39-40, 56-58. The SSA also advised Plaintiff that she had the right to submit further evidence and to issue a subpoena if necessary.

An Administrative Law Judge (ALJ) held a hearing on January 13, 2009. Tr. 162-83. At the hearing Plaintiff was represented by an attorney. Plaintiff testified she had contacted the Internal Revenue Service (IRS) to obtain a copy of her 1990 tax return and was advised the IRS does not keep tax returns "for that long." Tr. 170. Plaintiff further testified she did not have a copy of her 1990 tax return. Plaintiff stated the employers for whom she worked in 1990 were no longer in business, and, therefore, she was unable to obtain earnings records from them. Tr. 170. Plaintiff's counsel stated he would try to obtain Plaintiff's bank records from 1990, but he was

doubtful that the bank kept records back to that time. Tr. 176. At the hearing the ALJ agreed to hold the record open to give Plaintiff an opportunity to obtain earnings records from 1990.

On March 20, 2009, the ALJ advised Plaintiff that the ALJ had held the record open for two months and needed to make a decision as to Plaintiff's claim.

The ALJ issued a decision on April 27, 2009, in which she found Plaintiff did not have enough quarters of coverage to qualify for benefits as of her December 31, 2000, alleged onset date. Tr. 16-18. Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner on October 1, 2009, when the Appeals Council denied Plaintiff's request for review.

## **STANDARDS**

The initial burden of proof rests on the claimant to establish disability. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *Reed v. Massanari*, 270 F.3d 838, 841

(9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). “Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Robbins,* 466 F.3d at 882. The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

**DISCUSSION**

**I. Calculation of quarters of coverage.**

Before the Commissioner can make a determination as to a claimant's disability, the claimant must establish she became disabled during a period in which she had "insured status" under Title II of the Social Security Act (SSA). 42 U.S.C. § 416(i)(3). *See also Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). To establish disability insured status under the SSA, a claimant must show she was both fully insured and did not have "less than 20 quarters of coverage during the 40-quarter period which ends with" the quarter in which disability is found. 42 U.S.C. § 416(i)(3)(B)(I).

"A quarter of coverage (QC) is the basic unit of social security coverage used in determining a worker's insured status. [The Commissioner] credit[s] [claimants] with QCs based on [their] earnings covered under social security." 20 C.F.R. § 404.140(a). For income earned after 1978, the Regulations governing calculation of quarters of credit provide in pertinent part:

> [W]e credit you with a QC for each part of the total wages paid . . . to you in a calendar year that equals the amount required for a QC in that year. For example, if the total of your wages . . . for a calendar year is more than twice, but less than 3 times, the amount required for a QC in that year, we credit you with only 2 QCs for the year . . . . In addition, we cannot credit you with more than four QCs for any calendar year. The amount of wages . . . that you must have for each

> QC is--
>
> (1) $250 for calendar year 1978; and
>
> (2) For each calendar year after 1978, an amount determined by the Commissioner for that year (on the basis of a formula in section 213(d)(2) of the Act which reflects national increases in average wages).

20 C.F.R. § 404.142(a). Finally, the Regulations provide:

> In general, your social security benefits are based on your earnings that are on our records . . . . Basically, you receive credit only for earnings that are covered for social security purposes. The earnings are covered only if your work is covered. If you are an employee, your employer files a report of your covered earnings.

20 C.F.R. § 404.1001(a)(1).

## II. Analysis

As noted, the Commissioner denied Plaintiff's application for DIB on the ground that she did not have enough quarters of coverage to qualify for benefits as of her December 31, 2000, alleged onset date.

Plaintiff asserts the ALJ erred because she used the December 31, 2000, onset date alleged by Plaintiff in her 2004 DIB application rather than the January 1, 2000, onset date alleged by Plaintiff in her 2006 application.

Plaintiff also alleges she received more income in 1990 than reported by the SSA, she has sufficient quarters of coverage to qualify for benefits, and the ALJ erred by failing to fully develop the record as to Plaintiff's 1990 earnings.

**A. The ALJ's calculation of quarters of coverage from the December 31, 2000, onset date was harmless error.**

As noted, Plaintiff contends the ALJ erred because she used the December 31, 2000, onset date alleged by Plaintiff in her 2004 DIB application rather than the January 1, 2000, onset date alleged by Plaintiff in her 2006 application. Using the December 31, 2000, onset date, the ALJ calculated Plaintiff had only 17 quarters of coverage as opposed to the 20 quarters required by statute.

The Commissioner contends the ALJ's error was harmless because Plaintiff would still have only 19 quarters of coverage even if the ALJ had used the January 1, 2000, onset date. Tr. 54. The Court agrees. A review of Plaintiff's covered quarters as set out in the record reflects Plaintiff still would not have sufficient quarters of coverage even if the ALJ used January 1, 2000, as Plaintiff's alleged onset date. Accordingly, the ALJ's use of the December 31, 2000, onset date is harmless error.

**B. The ALJ did not err when she failed to request earnings information from the IRS, Plaintiff's former employers, and Plaintiff's banking institutions.**

As noted, Plaintiff contends the ALJ erred by failing to fully develop the record as to Plaintiff's 1990 earnings. Specifically, Plaintiff contends the ALJ should have contacted the IRS, Plaintiff's employers from 1990, and "banking institutions" to discover whether they had any information as to

Plaintiff's 1990 earnings.

At the hearing Plaintiff testified she was unable to obtain her 1990 tax return from the IRS because the IRS no longer had 1990 returns. IRS Form 4506, which a filer may use to request a copy of an earlier tax return, notes tax returns are available for seven "years from filing before they are destroyed by law." In addition, the IRS is only able to provide filers with copies of their W-2 Forms for up to ten years before the current tax year. Accordingly, even if the ALJ had requested Plaintiff's 1990 tax return or W-2 information from the IRS, the ALJ would not have been able to obtain that information because it was more than seven to ten years old at the time Plaintiff filed her application for DIB.

As noted, Plaintiff testified her 1990 employers were "out of business," and, therefore, she could not obtain any wage information from them. There is not any indication in the record that the ALJ would have had more success than Plaintiff in obtaining wage information from Plaintiff's 1990 employers who are no longer in business.

Moreover, Plaintiff's counsel stated he would try to obtain Plaintiff's bank records from 1990, but he was doubtful the bank would still have those records. As noted, Plaintiff did not supplement the record with 1990 banking information or with any other information as to her 1990 earnings. Thus, there is

not any indication in the record that the ALJ would have had more success in obtaining Plaintiff's banking records from 1990.

Finally, the Social Security Act provides in pertinent part:

> The Commissioner's records shall be evidence for the purpose of proceedings before the Commissioner of Social Security or any court of the amounts of wages paid to . . . an individual and of the periods in which such wages were paid. . . . The absence of an entry in such records as to wages alleged to have been paid to . . . an individual in any period shall be evidence that no such alleged wages were paid to . . . such individual during such period.

42 U.S.C. § 450(c)(3), *held unconstitutional on other grounds by Florida ex rel. Bondi v. U.S. Dep't of Health And Human Serv.*, NO. 3:10-CV-91-RV, 2011 WL 285683, at *1 (N.D. Fla. Jan. 31, 2011). SSA Regulations provide in pertinent part:

> (a) Generally. For social security purposes, SSA records are evidence of the amounts of your earnings and the periods in which they were received.
>
> * * *
>
> (c) After time limit ends. After the time limit ends for a year--
>
> (1) If SSA records show an entry of . . . wages for an employer for a period in that year, our records are conclusive evidence of . . . the wages paid to you by that employer and the periods in which they were received . . .;
>
> (2) If SSA records show no entry of wages for an employer for a period in that year, our records are conclusive evidence that no wages were paid to you by that employer in that period.

20 C.F.R. § 404.803(a) and (c).

The Court, therefore, concludes the ALJ did not err when she relied on the SSA earnings records for Plaintiff. The Court also concludes the ALJ did not err by failing to develop the record when she did not request Plaintiff's 1990 records from the IRS, from Plaintiff's 1990 employers, or from Plaintiff's banking institutions because the record reflects the ALJ's efforts to do so would have been futile.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 8th day of February, 2011.

/s/ Anna J. Brown

ANNA J. BROWN
United States District Judge